# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1529

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Fernando Sanchez-Garcia, | * |
| | * |
| Appellant. | * |

_____      Appeals from the United States
District Court for the
No. 11-2113      Western District of Arkansas.

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Torrance Bunch, | * |
| | * |
| Appellant. | * |

_____

Submitted: November 17, 2011
Filed: July 18, 2012

_____

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Torrance Bunch and Fernando Sanchez-Garcia were each convicted by a jury of conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846. The jury also found Bunch guilty of three counts of distribution of five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). On appeal, Bunch alleges that he was denied his Sixth Amendment right to counsel, and Sanchez-Garcia contends that the district court[1] erred in denying his motion for a mistrial and committed other trial-related errors. We affirm.

I.

On December 16, 2009, law enforcement officers executed a search warrant on an apartment in Fort Smith, Arkansas. In the apartment, officers found Torrance Bunch, Amanda Hall, and Fernando Sanchez-Garcia, along with over $12,000 in United States currency, several cellular telephones, a set of scales, and thirty-seven grams of methamphetamine. When the officers entered the residence, Sanchez-Garcia ran to the bathroom and attempted to flush the methamphetamine down the toilet. During the search, the officers interviewed Bunch, who admitted to selling methamphetamine. Bunch and Sanchez-Garcia were later arrested and convicted in state court of conspiracy to possess methamphetamine with intent to deliver.

Law enforcement officers continued to investigate Bunch, Hall, and Sanchez-Garcia. In March 2010, officers made a series of three controlled purchases of methamphetamine using a confidential informant. During the investigation, the officers discovered evidence that Bunch was supplying the methamphetamine,

---

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

arranging the sales, and directing Hall, Charles Crutchfield, and Krysten McConnell to distribute the methamphetamine and pick up the payments.

On May 26, 2010, a grand jury charged Bunch, Sanchez-Garcia, Hall, Crutchfield, and McConnell with conspiracy to possess with intent to distribute 500 grams or more of methamphetamine. Bunch was also charged with three counts of distribution of methamphetamine. Three of the co-defendants—Hall, Crutchfield, and McConnell—signed plea agreements with the government and agreed to testify against Bunch and Sanchez-Garcia.

At trial, the government presented evidence of Bunch's purchase and distribution of methamphetamine in Fort Smith. This evidence included details of the 2009 search, recordings and eyewitness testimony of the three controlled buys, testimony from Crutchfield, McConnell, Hall, and Jerry Frazier that they each had distributed methamphetamine for Bunch, and testimony from Miguel Hugo Munoz-Gonzales and Ann Marie Porta that Bunch purchased large quantities of methamphetamine for distribution from both Munoz-Gonzales and Sanchez-Garcia. Munoz-Gonzales and Porta further testified that Sanchez-Garcia occasionally worked with Bunch to distribute methamphetamine. Porta also testified that Sanchez-Garcia ran his own operation of methamphetamine distribution. The government introduced an audio recording of a telephone call made by Sanchez-Garcia from the Sebastian County Jail to Bunch that included a discussion of methamphetamine distribution.

The jury returned verdicts of guilty on all counts. Because Bunch had sustained three prior felony drug convictions, the district court sentenced him to a mandatory statutory term of life imprisonment on the conspiracy charge and 20 years' imprisonment on each distribution charge, to run concurrently. The court sentenced Sanchez-Garcia to 324 months' imprisonment. Both defendants appeal.

II.

After a series of pretrial events, Bunch proceeded to trial without counsel. On appeal, Bunch contends that the district court's rulings violated his right to counsel under the Sixth Amendment, because he did not knowingly, intelligently, and voluntarily waive his right to counsel.

Bunch originally retained Rex Chronister to represent him in this case and paid Chronister a $25,000 fee. But Chronister withdrew from the representation before trial, thus triggering the events that give rise to this aspect of the appeal. Chronister was required to withdraw because he represented both Bunch and his alleged co-conspirator, Amanda Hall, in their related state proceedings, and Hall was scheduled to testify against Bunch in this case.

After permitting Chronister to withdraw, the court instructed Bunch to obtain a new attorney or inform the court that he intended to proceed *pro se*. In a pretrial status conference, less than a week before trial, Bunch informed the court that he did not obtain a new attorney because he could not afford one. In response, the district court instructed Bunch that "[i]f you believe that you have no assets and can qualify for an attorney to be appointed, you can fill out the appropriate paperwork and if that's justified, then we will get you an attorney." Bunch refused to make a decision, telling the court to make a decision for him. Bunch declared that he was not going to ask for appointment of counsel because he had already paid for an attorney. When the district court asked Bunch if he wanted an appointed attorney or wanted to represent himself, Bunch refused to answer the question. The district court then scheduled the trial for six days later, November 8, 2010.

In a pretrial conference on November 5, 2010, Bunch reiterated that he was not requesting an appointed attorney. The district court informed Bunch that attorneys were available to represent him if he met the financial requirements, and asked him

if he wanted an appointed attorney, but Bunch refused to answer the question. After informing Bunch of the difficulty in proceeding *pro se* and the penalties he faced, the court asked him if he still wanted to represent himself, but Bunch responded that he "never said [he] was going to represent [himself]." The court again asked Bunch if he wanted an attorney, and Bunch said no. When asked if he was waiving his right to an attorney, Bunch again said no. Bunch then refused to choose one of the two options presented by the court—accepting a court-appointed attorney or proceeding *pro se*.

The district court opted to appoint a "standby attorney," who would be available to answer any legal questions from Bunch during the trial. The court also offered before trial to appoint the standby attorney to act as Bunch's attorney during trial. Bunch refused to answer. Bunch then declined to answer questions or to participate actively throughout the remainder of pretrial proceedings and the trial itself. In his opening statement to the jury, Bunch informed the court that he wished not to proceed with the trial, "because the attorney that I retained to represent me is not present today in the courtroom. And I do not proceed to represent myself. I paid for an attorney to represent me and he's not here."

The Sixth Amendment, as interpreted by the Supreme Court, grants an accused both the right to counsel and the alternative right to self-representation. *Faretta v. California*, 422 U.S. 806, 807 (1975). To represent himself, an accused must "knowingly and intelligently" waive his constitutional right to the assistance of counsel. *Id*. at 835. The Court in *Faretta* said that a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id*. (internal quotation omitted). We review *de novo* the district court's decision to allow the defendant to waive his right to counsel. *United States v. Kiderlen*, 569 F.3d 358, 364 (8th Cir. 2009).

Bunch contends that he did not waive his right to counsel because he repeatedly told the district court that he did not intend to represent himself and that he was not waiving his right to counsel. In Bunch's view, the district court gave him conflicting information regarding his options for representation after his attorney withdrew, and his statements and actions in response to the court show that he was "flustered and perplexed." He says that any waiver of the right to counsel was not knowing and intelligent.

The government, on the other hand, contends that Bunch waived his right to counsel through his conduct. The prosecution's view is that when Bunch refused to obtain a new attorney or to request an appointed attorney, he knowingly and intelligently waived his right to counsel. The government suggests that Bunch's refusal to answer the district court's questions regarding his choice of representation show that he was using his right to counsel to manipulate the system and delay the trial. *See Meyer v. Sargent*, 854 F.2d 1110, 1113 (8th Cir. 1988).

An accused can waive his right to counsel by conduct. Courts have held that where a defendant is warned that he must choose between continuing with court-appointed counsel or proceeding *pro se*, the defendant's choice to discharge the appointed counsel constitutes a knowing and intelligent waiver of the right to the assistance of counsel. *United States v. Hoskins*, 243 F.3d 407, 410 (7th Cir. 2001); *see also King v. Bobby*, 433 F.3d 483, 492-493 (6th Cir. 2006); *United States v. Irorere*, 228 F.3d 816, 826-827 (7th Cir. 2000). We agree with this general proposition.

Bunch's case presents a variation on the scenario addressed by our sister circuits. He was never represented by court-appointed counsel, and he did not choose to discharge his retained attorney. Nevertheless, once Bunch declared that he could not afford to retain a second lawyer, the district court presented Bunch with his two

-6-

remaining options: to accept a court-appointed attorney or to proceed without counsel. Bunch simply refused to respond.

Under those circumstances, and in light of the advice that the district court gave Bunch before the trial commenced, we conclude that Bunch knowingly and intelligently waived his right to counsel. The district court told Bunch that "the worst thing [he] can probably do is to try and represent [himself] in this matter," because "[i]t's difficult for a layperson to know about the Rules of Evidence and to know whether to speak and to know when not speak." The court repeated this advice several times, telling Bunch it would be a "serious, serious mistake" and "probably the worst idea I've seen in a long time" for Bunch to proceed without an attorney. The court also informed Bunch of the severe penalties that he faced if convicted, and of his right to appeal. Bunch claims that he thought an "appeal" was "a re-trial," in the event he did not like the result of the trial. But there is nothing in the record to support this contention, and Bunch's extensive experience with the criminal justice system suggests otherwise.

Bunch rejected the court's pretrial offers to appoint counsel for him, despite the presence of standby counsel who could have been appointed. Although Bunch did assert that he was not representing himself, we conclude that by repeatedly rejecting all options except self-representation, after having been warned of the consequences, Bunch "necessarily chose self-representation." *See King*, 433 F.3d at 492. The district court's rulings thus did not violate Bunch's rights under the Sixth Amendment.

III.

A.

Sanchez-Garcia first argues that the district court erred by not granting his motions for a mistrial based on two allegedly improper comments from witnesses regarding his immigration status.  We review a district court's denial of a motion for a mistrial because of a witness's improper comment for abuse of discretion.  *United States v. Branch*, 591 F.3d 602, 607 (8th Cir. 2009).  This court has deemed several factors relevant in deciding whether an improper remark warrants a mistrial: "(1) whether the remark was unsolicited; (2) whether the government's line of questioning was reasonable; (3) whether a limiting instruction was immediate, clear, and forceful; (4) whether any bad faith was evidenced by the government; and (5) whether the remark was only a small part of the evidence against the defendant."  *Id*. at 608.

Sanchez-Garcia first points to the testimony of Miguel Hugo Munoz-Gonzales, one of Bunch's methamphetamine suppliers.  When asked by the prosecutor if he had any information about Sanchez-Garcia's involvement with Bunch in the distribution of methamphetamine, Munoz-Gonzales responded as follows:

> I asked [Sanchez-Garcia] where he was from—he told me from Mexico, Puebla, so we were just talking, and then I asked him about he had been in the newspaper, that I had seen him in the newspaper.  I asked him what had happened, and he told me that it was a mistake, that he was leaving the—that he was only here for a re-entry charge.

Sanchez-Garcia did not object to the testimony when it was received, but moved for a mistrial at the conclusion of Munoz-Gonzales's testimony.

We see no abuse of discretion in the district court's denial of a mistrial.  The remark by Munoz-Gonzales was plainly unsolicited.  It was nonresponsive to the

-8-

government's reasonable line of questioning about Sanchez-Garcia's involvement with Bunch in methamphetamine distribution. Sanchez-Garcia declined a limiting instruction and deliberately chose to withhold a contemporaneous objection so as to avoid drawing attention to the statement. There is no evidence of bad faith by the government, and the statement was only a small part of the evidence against Sanchez-Garcia.

Sanchez-Garcia next points to a statement from witness Ann Marie Porta on redirect examination. On cross-examination, Sanchez-Garcia's counsel impeached Porta by eliciting testimony that she sustained a prior conviction for fleeing police. On redirect, the prosecutor asked Porta what had happened that led to the conviction and who had been with her at the time of the incident. In response, Porta testified that she was pulled over for speeding, "[a]nd Fernando [Sanchez-Garcia] was in the car with me and he is illegal, so we decided to take off." The district court immediately directed the jury to disregard the statement. Sanchez-Garcia renewed his motion for a mistrial, and the district court again denied the motion.

Porta's testimony is more problematic, because the remark was solicited by the prosecutor. The rules of evidence permitted Sanchez-Garcia to impeach Porta with a prior felony conviction, *see* Fed. R. Evid. 609(a)(1)(A), and it is questionable whether the circumstances of the offense, including Sanchez-Garcia's involvement and his immigration status, were relevant to rehabilitating Porta's credibility. *See United States v. Plante*, 472 F.2d 829, 832 (1st Cir. 1973) (noting a split of authority as to whether the proponent of a witness may "go into the details" of a prior conviction in order to "diminish the effect of the conviction"). But the district court acted promptly to strike the portion of Porta's testimony concerning immigration status, and the comment must be considered in the context of the entire trial. *United States v. Sherman*, 440 F.3d 982, 988 (8th Cir. 2006).

The government presented substantial evidence of Sanchez-Garcia's guilt. This included corroborating testimony from Munoz-Gonzales, Hall, and Porta that Sanchez-Garcia supplied methamphetamine to Bunch, testimony from Eduardo Noriego that Sanchez-Garcia sold him a pound of methamphetamine, and testimony from Porta that Sanchez-Garcia bought and sold "a couple of pounds" of methamphetamine a month. A law enforcement offer also testified that Sanchez-Garcia possessed thirty-seven grams of methamphetamine during the 2009 search of the apartment containing Bunch, Hall, and Sanchez-Garcia. The jury heard a recording of a telephone conversation from Sanchez-Garcia to Bunch from the Sebastian County Jail in which they discussed methamphetamine distribution, and a stipulation that Sanchez-Garcia was convicted in 2010 for conspiracy to possess methamphetamine with intent to deliver. Given the strength of the evidence and the district court's prompt curative actions after the objectionable testimony, it was not an abuse of discretion for the court to deny a mistrial. *See United States v. Whitney*, 787 F.2d 457, 461 (8th Cir. 1986).

Sanchez-Garcia also argues that he was entitled to a mistrial because the prosecutor made improper comments during the closing argument. Sanchez-Garcia made no contemporaneous objection, so we review the claim under the plain-error standard. *United States v. New*, 491 F.3d 369, 378 (8th Cir. 2007).

During his closing argument, the prosecutor stated: "At the end of the day, this is what it comes down to. Methamphetamine. We all know that it's an illegal drug. We all know what it does to our community." Later, in his rebuttal argument, the prosecutor said: "[T]hese two defendants are revealed to you today for what they truly are—two people who conspired together to possess with the intent to distribute methamphetamine, two people who have the object of making sure that the methamphetamine was supplied to the users and the addicts right here in Fort Smith, Arkansas." Sanchez-Garcia argues that these statements improperly appealed to the jury to act as "the conscience of the community."

The prosecutor's comments were not improper. "Unless calculated to inflame, an appeal to the jury to act as the conscience of the community is not impermissible." *United States v. Lewis*, 547 F.2d 1030, 1037 (8th Cir. 1976). This court has said that a prosecutor should not urge a jury to act as a "bulwark against . . . putting this poison on the streets," because such language is unduly inflammatory, and may lead a jury to substitute emotion for evidence. *United States v. Johnson*, 968 F.2d 768, 771 (8th Cir. 1992). But the argument here—citing the effects of methamphetamine on the Fort Smith community—is of a different character. We agree with the Fifth Circuit that where the prosecution is "merely reminding the jurors of the adverse [e]ffect that the defendants' activities had upon the particular community in which they sold [methamphetamine], rather than encouraging the jurors to convict the defendants because the community expected a conviction," the argument is not improper. *United States v. Fields*, 72 F.3d 1200, 1208 (5th Cir. 1996).

B.

Sanchez-Garcia next contends that he was prejudiced by a joint trial with Bunch, and that the district court should have severed the trials pursuant to Federal Rule of Criminal Procedure 14(a). He did not move to sever before or during trial, so we review the district court's conduct of a joint trial for plain error. *United States v. Brown*, 560 F.3d 754, 766 (8th Cir. 2009). Sanchez-Garcia therefore must "show not only that there was a Rule 14 violation affecting his substantial rights, but also that there is some extraordinary reason for us to reverse for such error despite his failure to raise the issue in the trial court." *Id.* (internal quotations omitted).

A defendant is entitled to severance only if he shows that prejudice would result from a joint trial. Fed. R. Crim. P. 14; *United States v. Davis*, 534 F.3d 903, 916 (8th Cir. 2008). "Joint trials play a vital role in the criminal justice system," as "[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537

(1993) (internal quotations and citations omitted). A district court should grant a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. at 539. Our cases suggest that to show sufficient prejudice, a defendant must establish that "(a) his defense is irreconcilable with that of his co-defendant or (b) the jury will be unable to compartmentalize the evidence as it relates to the separate defendants." *Davis*, 534 F.3d at 916-17 (internal quotations omitted).

Sanchez-Garcia argues that he was prejudiced by the fact that Bunch proceeded without counsel and refused to cooperate with the district court during trial. He infers that the jury must have been biased against Bunch, and that the bias carried over to Sanchez-Garcia. This purported prejudice does not fall within either of the two categories of prejudice that this court has recognized, *Davis*, 534 F.3d at 916-17, and we have held that disruptive courtroom behavior by one defendant is not sufficiently prejudicial to require severance. *United States v. Delpit*, 94 F.3d 1134, 1143-44 (8th Cir. 1996). The risk of prejudice in a joint trial is best addressed by jury instructions, *id*. at 1144, and the district court in this case directed the jury to give separate consideration to the evidence about each individual defendant. Final Jury Instruction No. 4. Sanchez-Garcia thus has not shown that the district court committed plain error by proceeding with a joint trial.

## C.

Sanchez-Garcia next argues that the government breached its discovery obligations under Federal Rule of Criminal Procedure 16 by failing to disclose the audio recording of Sanchez-Garcia's telephone call to Bunch from the Sebastian County Jail in a timely manner. The prosecution disclosed the recording to the defense three days before trial. Sanchez-Garcia contends that the district court should have excluded the recording from trial.

-12-

Rule 16 requires the government to disclose to the defendant, "[u]pon a defendant's request," any written or recorded statements by the defendant if the statement is "within the government's possession, custody, or control," and "the attorney for the government knows—or through due diligence should know—that the statement exists." Fed. R. Crim. P. 16(a)(1)(B)(i). In this case, however, Sanchez-Garcia made no request pursuant to Rule 16(a)(1)(B), so there was no violation of Rule 16. *See United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000).

The government, moreover, represented that it did not discover the call until the week before the trial, and then promptly disclosed an audio recording to Sanchez-Garcia. A witness had disclosed during trial preparation that she was present when Bunch received a call from Sanchez-Garcia in jail. According to the prosecution, authorities then discovered that Sanchez-Garcia had used another inmate's personal identification number to place the call. Sanchez-Garcia did not rebut this representation. Nor did he seek a continuance or demonstrate how additional time would have allowed him to rebut the audio recording. The district court did not abuse its discretion by admitting the evidence.

D.

Finally, Sanchez-Garcia argues that his trial counsel provided ineffective assistance of counsel. Generally, claims of ineffective assistance of counsel should be raised in collateral proceedings under 28 U.S.C. § 2255. *United States v. Bauer*, 626 F.3d 1004, 1009 (8th Cir. 2010). This is not an instance "where the record has been fully developed, where not to act would amount to a plain miscarriage of justice, or where counsel's error is readily apparent," *United States v. Hubbard*, 638 F.3d 866, 869 (8th Cir. 2011) (internal quotation omitted), so we decline to address the ineffective-assistance claim on direct appeal.

*     *     *

The judgments of the district court are affirmed.

_____