# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3852

_____

United States of America

*Plaintiff - Appellee*

v.

Ted H. Grauer

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: September 21, 2012
Filed: December 10, 2012

_____

Before LOKEN and MURPHY, Circuit Judges, and JACKSON,[*] District Judge.

_____

LOKEN, Circuit Judge.

After a four-day trial, a jury convicted Ted H. Grauer of attempted enticement of a minor to engage in illicit sexual activity in violation of 18 U.S.C. § 2422(b), and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).  He was

_____

[*] The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri, sitting by designation.

acquitted on two counts of distributing child pornography. The district court[1] sentenced him to 151 months in prison on the attempted enticement count and a concurrent 120 months on the child pornography possession count. Grauer appeals, arguing: (1) prosecutorial misconduct in cross examining a defense expert and in rebuttal closing argument that deprived him of a fair trial; (2) insufficient evidence to convict him of possessing child pornography; and (3) procedural sentencing error in calculating the advisory guidelines range for the attempted enticement count, namely, imposing the two-level enhancement for misrepresenting his identity authorized in U.S.S.G. § 2G1.3(B)(2). We affirm.

## I. Background

On January 21, 2010, Deputy Sheriff Jessup Schroeder, a member of the Iowa Internet Crimes Against Children Task Force, logged onto the Yahoo! Messenger chat system posing as Jenny Johnston, a 14-year-old girl from Clinton, Iowa, using the screen name lil_jenny_gurl13. Grauer, using the screen name horserancher2, entered the Iowa Romance chatroom and began chatting with "Jenny." Their lengthy chats continued until April 9, 2010. In the first chat, Jenny told Grauer she was a 14-year-old from Clinton. About an hour later, in recounting a recent sexual relationship with a college girl, Grauer bragged, "Well she liked me. And I am like 49. She wants me to come back and see her one of these days." Grauer was in fact 58 years old. He also told Jenny that his last name was Gray. When asked about his job, he initially told Jenny he was a consultant. He later claimed to be an engineer who designs "energy stuff" to "save the earth." He also told Jenny he was married and had a son and sent her several pictures of himself.

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

As the chats progressed, they became sexually explicit. Grauer claimed to have several young girlfriends: one who he can only see once every two weeks and "2 or 3" others, including an 18-year-old student at the University of Iowa. On March 8 and March 25, Grauer sent links to images of young-looking males and females engaged in various sexual acts, including sexual intercourse. He frequently chatted about being "inside" of Jenny and engaging in oral, vaginal, and anal sex. He also claimed to have spoken with women who had sex at Jenny's age who told him that "it was a wonderful thing." On April 7, two days before he traveled to Clinton to meet Jenny, he claimed to have spoken to a girl Jenny's age in a different chat room who was having sex with an older man that was "a wonderful thing for her."

During a five-hour chat on April 1, Grauer transmitted a webpage of "cute girls" he found at jailbaitgallery.com. He asked Jenny if they could engage in anal sex after telling her to bring up images depicting that act. They exchanged phone numbers and agreed to meet in Clinton on April 9, 2010, near the Mississippi River floodgates. He told her they would bike along the river "and find someplace where we can be alone," describing a progression of sexual activity and meetings two or three times a month. On April 9, Grauer drove from his home in Van Meter to Clinton, sending messages along the way that were intercepted by law enforcement officers. When he reached the arranged meeting place, he sent a message telling Jenny to come meet him. The police then approached and arrested him, finding in his vehicle a fleece blanket he had purchased that morning. A warrant search of his home yielded a laptop computer containing images and videos the jury ultimately found to be child pornography. This prosecution followed.

## II. The Prosecutorial Misconduct Issues

A.  Cross Examination of Dr. James Herriot.  Grauer's first defense witness at trial was Dr. James Herriot, who holds a Ph.D. in human sexuality from the Institute for the Advanced Study of Human Sexuality in San Francisco. Dr. Herriot testified

that internet chat rooms thrive on anonymity and are primarily an entertainment medium where adults engage in fantasy "age-play," which he described as role-playing in which one adult plays an older person and the other a young person, "often the naughty schoolgirl." Dr. Herriot testified that he had reviewed transcripts of the chats between Grauer and Jenny and opined that they had many of the "signatures" of adult age-play. During cross examination, Dr. Herriot was asked:

> Q. You have never testified in a case for the defense or for the government where a person was charged with chatting with an actual minor on the Internet?
>
> A. . . . [N]o actual minors. It is all adults. Adults talking to adults. . . .
>
> \* \* \* \* \*
>
> Q. . . . You have never interviewed someone who was charged with meeting . . . an actual minor on the Internet and engaged in internet chat in a chat room and then traveled to meet with that minor?
>
> A. No . . . I have not, no.
>
> Q. So you really don't know what the culture of Internet chat is for people who actually are looking for minors and meet them?
>
> A. Well . . . it's either rare or nonexistent. It is extremely rare as far as we know from our research. It is adults talking to adults is the -- the main thing going on here.

To impeach Dr. Herriot's opinion that adults looking to find and meet actual minors online is "rare or nonexistent," the prosecutor then asked whether Dr. Herriot was aware of a specific case from the Southern District of Iowa:

So you're not aware of a case that arose here in Davenport where a subject named Fronczak met a 13-year-old girl here in Davenport and traveled here from California, picked her up, took her to a motel, and had sex with her, you don't know about that case?

Defense counsel did not object. Dr. Herriot answered, "if it was in the newspapers I may have read about it." When the prosecutor began his next question, "So you don't know about the case of the 13 year old in Burlington, Iowa, that met a man online . . .," defense counsel objected that the question was beyond the scope of his direct examination, argumentative, and irrelevant. The district court overruled the objection. Dr. Herriot answered, "it sounds like it is similar to some case that I saw in the newspapers." When the prosecutor then asked if Dr. Herriot was familiar with a third local case, the district court overruled Grauer's Rule 403 objection. The court sustained his objection to a question about a fourth case as cumulative.

Grauer argues that this line of questioning was improper because it argued facts not in evidence and "was clearly calculated to inflame the jury." Reviewing the district court's evidentiary rulings for abuse of discretion, we disagree. See, e.g., United States v. Hull, 419 F.3d 762, 770 (8th Cir. 2005) (standard of review), cert. denied, 547 U.S. 1140 (2006). The cross examination was highly probative. Dr. Herriot's testimony on direct examination tended to support a primary defense to the enticement charge -- that Grauer believed his Internet chats with "Jenny" were with an adult. It was relevant to establish on cross examination that Dr. Herriot's experience was limited to cases in which defendants chatted with undercover law enforcement officers posing as minors. Rather than simply admit this fact, Dr. Herriot embellished his credibility with the remarkable assertion that a highly relevant situation that was beyond his personal experience -- adults using internet chat rooms to entice actual minors to engage in sexual activity -- was "rare or nonexistent." It was not improper for the prosecutor to impeach Dr. Herriot by asking if he was aware of actual cases known to the prosecutor (and to the district court) that disproved this

assertion.  See United States v. Pierson, 544 F.3d 933, 940-41 (8th Cir. 2008), cert. denied, 129 S. Ct. 2431 (2009).  Nor did the district court abuse its discretion by overruling Grauer's objections to this line of questioning until it became cumulative. Thus, Grauer's contention that the district court committed plain error by not granting a mistrial *sua sponte* is without merit.

    B.  Closing Argument.  The prosecutor stated during initial closing argument:

> I told you, make no mistake about it, this is a dangerous man, and he proved it.  He proved it the day he got in that car and he packed all his stuff and he drove to Clinton, Iowa.

In Grauer's closing argument, defense counsel responded:

> [Y]ou know from looking at these chats that that week it was raining in Clinton, Iowa. . . .  So the ground is saturated.  And I am going to take this fleece blanket that is going to soak up water like a sponge and drop it on the ground and go do my thing with a 14-year-old girl in public. It is patently ridiculous.  It is a fantasy. . . .  [I]f I am going to do that, doesn't it make a heck of a lot more sense to do it in a hotel, a motel, you know, ride your bike over to the Motel 6 . . . you don't even have to go in through the hallway, nobody will see you.

The prosecutor returned to this issue in rebuttal:

> [Defense counsel] says that the smarter approach here is to go to a motel. . . .  It is a terrible idea.  He's -- you heard Dr. Herriot.  These stories are on the news.  You don't go pick up a 13 year old and take her to a motel.  Those are the guys getting arrested.
>
> Daniel Fron[cz]ack flew from Pennsylvania, picked up a girl in Muscatine . . . had sex with her got caught, got arrested, got sent away.

. . . Justin Carter met a girl on the Internet. [Objection by Grauer overruled.]

Justin Carter, you heard about him. You get the point. Why is he buying a cheap fleece blanket if he's meeting an adult female. Because he's going to throw it away when he's done.

The rebuttal argument concluded:

You're the conscience of this community as the Judge told you. You've had to see terrible things, disgusting things. It is time for justice. Thank you.

Grauer argues this rebuttal improperly argued facts regarding Fronczak and Carter that were not in evidence. He asserts that the prosecutor's closing argument was "so egregious, suggestive, and inflammatory [that it] infected the entire trial." We disagree. "The trial court has broad discretion in controlling closing arguments and without a clear showing of abuse, that discretion will not be overturned." United States v. Franklin, 250 F.3d 653, 660 (8th Cir.) (quotation omitted), cert. denied, 534 U.S. 1009 (2001). In closing argument, "a prosecutor is entitled to make a fair response and rebuttal when the defense attacks the government's case." United States v. Ziesman, 409 F.3d 941, 954 (8th Cir.) (quotation omitted), cert. denied, 546 U.S. 990 (2005).

Here, it was not an abuse of discretion for the district court to allow the government in rebuttal to respond to defense counsel's argument that Grauer would have gone to a motel, rather than a public bike trail, if he had intended to have sex with a minor. The rebuttal included only a brief reference to prior cases that Dr. Herriot had acknowledged on cross examination. Nor was it improper for the prosecutor to conclude his closing argument by stating that the jury acts as the "conscience of the community," as the district court had stated during voir dire.

"Unless calculated to inflame, an appeal to the jury to act as the conscience of the community is not impermissible." United States v. Sanchez-Garcia, 685 F.3d 745, 753 (8th Cir. 2012) (quotation omitted). The concluding statement that the trial had compelled the jury "to see terrible things, disgusting things," was fair comment on the trial evidence. There was no error, plain or otherwise, in the district court's control of the closing arguments in this hard-fought trial.

### III. Sufficiency of the Evidence

Following Grauer's arrest, police conducted a warrant search of his home and seized a Hewlett Packard laptop computer from an office area in the home. A forensic computer examiner found numerous images and videos depicting suspected child pornography in user-created electronic folders. Count 4 of the superseding indictment charged him with knowing possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). At trial, Grauer stipulated that one video depicted a minor, and the government presented testimony that other images and videos depicted minors. Eight images and seven videos were submitted to the jury on Count 4, identified by the electronic file names found on Grauer's computer. The jury unanimously found that three images and five videos were child pornography that Grauer knowingly possessed on April 9, 2010, the day of his arrest.

On appeal, Grauer argues the evidence was insufficient to convict him of "knowing" possession of child pornography because the government presented no evidence as to how the images came to be on his computer or when they were accessed. "We review a challenge to the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Koch, 625 F.3d 470, 478 (8th Cir. 2010) (quotations omitted).

Grauer's wife testified that he operated a business from his home office, that he kept a Hewlett Packard laptop where he worked that looked like the laptop seized by police, and that no one else used his laptop regularly. This was sufficient evidence that he constructively possessed the child pornography found on his computer following his arrest. See United States v. Acosta, 619 F.3d 956, 960-61 (8th Cir. 2010), cert. denied 131 S. Ct. 1618; United States v. Kain, 589 F.3d 945, 950 (8th Cir. 2009). Evidence that multiple images of child pornography were found in electronic folders manually created by the computer's user, as in this case, is sufficient evidence of knowing possession to support a § 2252(a)(4)(B) conviction. Koch, 625 F.3d at 478. In addition, the government presented evidence that some images found on Grauer's computer were identical to images he had transmitted to "Jenny," and that he told Jenny during their numerous chats that he hid images of topless girls on his hard drive so his wife would not find them. Viewed in the light most favorable to the verdict, the evidence was more than sufficient for a reasonable jury to find, beyond a reasonable doubt, that Grauer knowingly possessed visual depictions of minors engaging in sexually explicit conduct in violation of § 2252(a)(4)(B).

## IV. The § 2G1.3(b)(2)(A) Enhancement

To determine Grauer's advisory guidelines range, the Presentence Investigation Report (PSR) calculated the total offense level separately for each count of conviction. For the attempted enticement count, the PSR added to the base offense level of 28 a two-level enhancement under § 2G1.3(b)(2)(A) because "the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct." For the child pornography possession count, the PSR added to the base offense level of 18 enhancements totaling 19 levels, including a 7-level increase under § 2G2.2(b)(3)(E) for distribution of material intended to entice a minor to engage in prohibited sexual conduct. This made the possession count "the Group

with the highest offense level," resulting in a total offense level of 38 under § 3D1.4 and an advisory guidelines range of 235 to 293 months in prison. Grauer objected to the § 2G1.3(b)(2) and § 2G2.2(b)(3)(E) enhancements.

At sentencing, the district court sustained Grauer's objection to the § 2G2.2(b)(3)(E) enhancement, which meant that the attempted enticement count, which also entailed a mandatory minimum ten-year sentence, became the Group with the highest offense level for advisory guidelines purposes. As to this count, the court overruled Grauer's objection to the § 2G1.3(b)(2) enhancement, explaining:

> Whether those misrepresentations were made with the intent to entice is the more difficult question.
>
> *     *     *     *     *
>
> The defendant . . . argues that his minor misrepresentation about his age, in this case more or less than 10 years, was not instrumental [a word used in United States v. Starr, 533 F.3d 985, 1002 (8th Cir.), cert. denied, 555 U.S. 1079 (2008)]. However, the Court finds the analysis in Star[r] does not seem applicable here because it focuses on the effect the misrepresentation had on the victim. Here, of course, there was no real victim. In Young the [Eighth Circuit] applied this enhancement reasoning that the defendant had lied about his occupation. He said he was an engineer, not a band teacher, after the "girl" had told him she hated band. He also lied and told her he wasn't married when he was. The Court found that the misrepresentations were made with the requisite intent and thus applied the enhancement. The Court applies the enhancement.

This finding resulted in a combined total offense level of 34 and an advisory guidelines range of 151-188 months in prison. Grauer urged the court to impose the mandatory minimum sentence of 120 months. The government urged a sentence "in the middle of the range." After carefully weighing the 18 U.S.C. § 3553(a)

sentencing factors, the court sentenced Grauer to 151 months in prison, the bottom of the advisory range.

On appeal, Grauer raises only one sentencing issue, arguing that the district court erred in applying the two-level misrepresentation enhancement under § 2G1.3(b)(2)(A). The application note to this guideline provides:

> The misrepresentation to which the enhancement in subsection (b)(2)(A) may apply includes misrepresentation of a participant's name, age, occupation, gender, or status, as long as the misrepresentation was made with the intent to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct.

§ 2G1.3(b)(2)(A), comment. (n.3(A)). Grauer concedes that he misrepresented his name and age in his chats with "Jenny" but argues the misrepresentations were not made with the requisite intent. As with other Guidelines enhancements that require similarly fact-intensive findings, we review for clear error the district court's finding that Grauer knowingly misrepresented his identity with the intent to persuade, induce, or entice a minor to engage in prohibited sexual conduct. See United States v. Baker, 200 F.3d 558, 562 (8th Cir. 2000) (obstruction of justice); United States v. Telemaque, 934 F.2d 169, 170-71 (8th Cir. 1991) (targeting official victims); accord United States v. Simonson, 244 F. App'x 823, 826 (9th Cir. 2007).

Pointing out that we quoted Starr's use of the word "instrumental" in United States v. Young, 613 F.3d 735, 748 (8th Cir. 2010), cert. denied, 131 S. Ct. 962 (2011),[2] Grauer argues that his one-time misrepresentations of his age ("like 49,"

---

[2]We agree with the district court that Grauer's focus on the word "instrumental" is misplaced. The enhancement applies if the misrepresentation was intended to entice a minor victim, regardless of its effect on the victim. Thus, while the enhancement is warranted when the misrepresentation was in fact "instrumental" in persuading a minor to engage in prohibited sex, as in Starr, 533 F.3d at 1002, it

instead of 58) and his name ("Gray," instead of Grauer) "were not dramatic enough to have made a substantial difference" in his effort to persuade a minor victim to engage in sexually explicit conduct. He notes, quite correctly, that he told Jenny he was old enough to be her father and sent her pictures of himself that confirmed their age differential, unlike defendants in the cases on which the government relies, who made age misrepresentations clearly aimed at overcoming a minor's reluctance to engage in sex with an older man. See United States v. Watkins, 667 F.3d 254, 264 (2d Cir. 2012) (after telling minor female he was 38 when he was in fact 48, defendant said, the day before they had vaginal intercourse, "it's only [a] twenty years [age difference], it's common for couples"); United States v. Holt, 510 F.3d 1007, 1009-11 (9th Cir. 2007) (45-year-old male chatting online with a 13-year-old female claimed to be a 19-year-old college student).

If the sole focus of our inquiry was on Grauer's single age misrepresentation in his initial chat with Jenny -- "like 49" -- we would have significant doubt whether that representation was made with the intent to entice that the § 2G1.3(b)(2)(A) enhancement requires, given other disclosures that revealed he was indeed an older man. But the enhancement is inclusive, applying to all identity misrepresentations made with the requisite intent, including but not limited to those relating to "name, age, occupation, gender, or status." App. Note 3(A). The district court clearly recognized the breadth of this inquiry when it relied for its ruling on our decision in Young, where we upheld the enhancement based upon defendant's misrepresentation of his occupation and his marital status. 613 F.3d at 749. Here, Grauer misrepresented his age in recounting a recent sexual relationship with a college girl who "liked me." He initially told Jenny he was a consultant but later claimed to be an engineer who designs "energy stuff" to "save the earth." Over the course of their Internet relationship, Grauer claimed to have several young girlfriends who enjoyed

---

may also apply in cases where it had no such effect, such as Young, where the "victim" was an undercover police officer, as in this case.

sexual activity with him. Two days before he traveled to meet Jenny, he claimed to have chatted with a girl Jenny's age who said that having sex with an older man was "a wonderful thing." The record reflects a lengthy, carefully orchestrated attempt by a much older man to persuade and entice a minor female to engage in prohibited sexual conduct. The district court, having heard lengthy trial testimony regarding the nature and purpose of Grauer's chats, was in the best position to find whether he made one or more identity misrepresentations with the intent that warranted the § 2G1.3(b)(2)(A) enhancement. After careful review of the record, we cannot say the court's finding in this regard was clearly erroneous.

The judgment of the district court is affirmed.

_____