# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2140

_____

United States of America

*Plaintiff - Appellee*

v.

Sean Ray Conklin

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: May 16, 2016
Filed: August 30, 2016

_____

Before WOLLMAN, LOKEN, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Sean Ray Conklin of distributing methamphetamine and heroin after a two-day trial at which he represented himself. See 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Conklin appeals his conviction, arguing the district court[1]

_____

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

violated his Sixth Amendment right to counsel because he did not unequivocally state his intent to proceed *pro se*. Reviewing the determination that Conklin waived his right to counsel *de novo*, we affirm. United States v. Sanchez-Garcia, 685 F.3d 745, 751 (8th Cir. 2012) (standard of review), cert. denied, 133 S. Ct. 2046 (2013).

## I. Background.

Initially charged in a multi-defendant indictment with conspiring to distribute methamphetamine and heroin, Conklin retained attorney Michael Hoffman to defend him in that case. Because not all defendants had been located, the government obtained a second indictment charging only Conklin with two drug-distribution violations and dismissed him from the conspiracy case. On May 9, 2014, Conklin attended the initial appearance on the new charges with attorney Hoffman. The magistrate judge asked Conklin if he wished to retain Hoffman in the case. Conklin refused to answer, instead complaining about fee and communication issues with Hoffman. Toward the end of the conference, Conklin stated that he did not want court-appointed counsel and would seek retained counsel.

With trial set to begin July 15, 2014, the district court held a pretrial conference on June 26 because no attorney had entered an appearance as Conklin's defense counsel. Appearing by telephone, Conklin refused to discuss whether he had hired an attorney, wanted appointed counsel, or planned to represent himself, stating that he preferred to respond to the court in person. The court stated that it would schedule an in-person conference and warned Conklin:

> I want you to come prepared . . . to tell me specifically what you're going to do about an attorney representing you. And if you're not planning to have an attorney represent you, then . . . . I need to specifically warn you in person about the pitfalls and the dangers and the hazards of going to trial representing yourself. . . . [U]nless you have an attorney that you can tell me about at the next hearing, you need to

come prepared to answer a long litany of questions that I'll have [for] you about why you think that you can represent yourself at trial.

Conklin attended the July 2 conference without counsel. After he complained at length about unrelated matters, the district court focused on his representation at the impending trial:

-- THE COURT: [T]he issue here in [this case] is . . . whether Mr. Hoffman is going to represent you . . . or whether you are going to hire yourself another attorney, which you told the Court you were going to do, or whether you are going to represent yourself, or whether you want the Court to appoint defense counsel for you.

-- THE DEFENDANT: I do not want the Court to appoint counsel for me.

-- THE COURT: Okay. You do not want court-appointed defense counsel to represent you in this new drug case, correct?

-- THE DEFENDANT: Yep.

-- THE COURT: All right. So are you going to hire your own attorney to represent you?

Conklin refused to answer, resuming his complaints about unrelated matters and the fact that he had not yet received discovery from the government. The court observed that the government "was waiting to see if you were, in fact, going to retain your own new attorney to represent you on these two distribution charges," which government counsel confirmed. Conklin continued to avoid the representation issue:

-- THE COURT: Are you going to have an attorney, or are you going to be representing yourself?

-- THE DEFENDANT: Okay.

-- THE COURT: What are you going to do? . . . Are you going to hire an attorney?

Conklin again complained about unrelated matters, but the court persisted:

-- THE COURT: Okay. And let's move on to my question.

-- THE DEFENDANT: Okay.

-- THE COURT: Are you going to hire an attorney in [this case]?

-- THE DEFENDANT: Your Honor, I am expecting the discovery to be accomplished in time for me to make it to trial on the 15th [of July] so that I can review it, and in the meantime I will use my -- I will -- if I seek an attorney -- if I find an attorney that I'm comfortable with, I might hire him. In the meantime, I'm ready for my discovery, and I'll read it through as much as -- the best I can to prepare my defense, and I'll be at trial on the 15th.

The court confirmed that the government would make its discovery -- some 40 DVDs – available for Conklin's personal review if he were to represent himself. The court then told Conklin, "I need to cover some things with you then if you're intending to represent yourself. The case is not going to go to trial on July 15th. It can't. You can't go to trial representing yourself in a case where you've got 40 DVDs of discovery that you've got to listen to." The court explained to Conklin his Sixth Amendment right to waive appointed or retained counsel and proceed to trial *pro se*, and then asked if he understood that it is "extremely unwise to ever think about representing yourself in a criminal trial." Conklin replied, "Yes, I sure do. . . . I can start to show you proof in how I'm able to defend myself."

-4-

After a lengthy diversion to discuss Conklin's unrelated complaints, the court returned to the question of self-representation:

> I'm going to make a finding here that you have knowingly and intelligently and voluntar[il]y decided to waive your right to a court-appointed defense attorney in [this case]. I believe that I fully informed you that you do have a Sixth Amendment right to waive counsel and to proceed to trial pro se or on your own. I've tried to outline for you the extreme disadvantages of representing yourself at trial, and I think it's probably the worst decision that you could ever make in your life, but I find that you have made the decision that you wish to proceed to trial and represent yourself. I also find that . . . you are mentally competent to make that decision. But . . . I'm going to appoint stand-by counsel for you . . . an experienced defense attorney that would be there, standing by, so to speak, who would become familiar with the case and all the evidence, all the discovery, who would be there to assist you at trial if you wish. But if you don't wish to use the services of that stand-by counsel, you don't have to. You're not obligated to.

The court ended the conference after working through the discovery issues, answering Conklin's questions about the defense he intended to present at trial, repeating the court's advice to use counsel, and explaining that trial would be continued at Conklin's request. The court later appointed experienced stand-by counsel and scheduled the trial to begin on January 27, 2015.

At a conference on the record before trial began, the district court raised two trial issues discussed at the July 2 conference -- the government producing discovery and Conklin's representation at trial. As to discovery, government counsel advised the court that it had made all discovery available for Conklin's review, but jail staff advised that Conklin refused to review it. The court asked Conklin, "Why wouldn't you listen to [the DVDs]?" He replied, "I don't feel that I'm in danger by not doing it."

Regarding the question of self-representation, the court stated:

> I'm going to incorporate into the record here that entire discussion that we had back on July 2, 2014, concerning the hazards of representing oneself at trial. . . . I think [self representation is] an extremely unwise decision, but it's a decision that I felt back in July 2014, that you had voluntarily made and consciously made on your part. And is that still true?

Again refusing to answer the question, Conklin concluded a rambling response by stating, "I choose to move forward with trial under the grounds that everything has been stated." Conklin then participated in jury selection and represented himself at trial without making use of stand-by counsel the court provided.

## II. Discussion.

On appeal, Conklin claims that the district court violated his Sixth Amendment right to counsel by requiring him to represent himself despite the fact that he did not clearly and unequivocally request self-representation. "The Sixth Amendment . . . grants an accused both the right to counsel and the alternative right to self-representation." Sanchez-Garcia, 685 F.3d at 751, citing Faretta v. California, 422 U.S. 806, 807 (1975). Because an accused who conducts his own defense relinquishes "the traditional benefits associated with the right to counsel," a trial court considering a defendant's request to represent himself must make the defendant "aware of the dangers and disadvantages of self-representation" to ensure that his decision to waive the right of counsel is clear, unequivocal, knowing, and intelligent. Faretta, 422 U.S. at 835; see Reese v. Nix, 942 F.2d 1276, 1280 (8th Cir. 1991), cert. denied, 502 U.S. 1113 (1992). Whether the district court complied with this mandate has been central in most of our prior appeals raising Faretta issues. See, e.g., Hamilton v. Groose, 28 F.3d 859 (8th Cir. 1994), cert. denied, 513 U.S. 1085 (1995).

-6-

This appeal raises a less common issue: how to deal with a defendant who *refuses to state* whether he wishes to be represented at trial by counsel, either appointed or retained, or to represent himself. It is clear that a defendant cannot manipulate this Sixth Amendment right "in order to delay or disrupt his trial." Hamilton, 28 F.3d at 862. Therefore, to prevent a defendant from using refusal to respond as a tactic to postpone trial indefinitely, it is well-established that an accused can waive his right to counsel by conduct. For example, "where a defendant is warned that he must choose between continuing with court-appointed counsel or proceeding *pro se*, the defendant's choice to discharge the appointed counsel constitutes a knowing and intelligent waiver of the right to the assistance of counsel." Sanchez-Garcia, 685 F.3d at 751.

In Sanchez-Garcia, defendant's retained counsel withdrew before trial because of a conflict of interest. The court instructed defendant to obtain a new attorney or inform the court he would proceed *pro se*, and the court advised defendant of the dangers of self-representation. Defendant said he could not afford to retain a new attorney and then "refused to choose one of the two options presented by the court -- accepting a court-appointed attorney or proceeding *pro se*." Id. at 750. We held that "by repeatedly rejecting all options except self-representation, after having been warned of the consequences, [defendant] necessarily chose self-representation." Id. at 752 (quotation omitted). The government argues that Sanchez-Garcia is controlling precedent in this case. We agree.

Conklin argues the district court erred in finding a waiver of counsel because he never expressly asked to represent himself. That is true. But he categorically refused appointed counsel, refused to retain attorney Hoffman for this case, repeatedly said he was seeking other counsel and "if I find an attorney that I'm comfortable with, I might hire him," and then ignored the district court's reasonable

pretrial deadline for resolving the issue. In these circumstances, given the district court's thorough and repeated explanation of the dangers of self-representation, our decision in Sanchez-Garcia applies. As the Second Circuit explained in United States v. Barton, 712 F.3d 111, 119 (2d Cir. 2013), "[b]ecause [defendant] was fully advised of his right to counsel, the importance of this right, and his options for exercising it, but did not hire a lawyer and refused to have one appointed, the district court was authorized to treat his conduct as a knowing, intelligent and voluntary waiver of his right to counsel, and to require him to proceed without representation if he failed to obtain counsel within a reasonable time."

Conklin further argues the district court forced him to proceed *pro se* instead of granting him more time to find counsel. Conklin acknowledges the court granted a six month trial continuance after concluding that he had waived his right to counsel. But he argues, without supporting authority, that the court erred by failing to advise him that he continued to have the right to retain private counsel. This contention ignores the colloquy before the start of trial, when the district court asked Conklin whether he still waived the right to counsel, and Conklin again failed to answer the question. This exchange gave Conklin one final chance to avoid the dangers of self-representation, and he again refused to take a position. On this record, it is apparent that Conklin knew he could retain attorney Hoffman or other counsel, or reverse his prior position and ask the court to appoint counsel, and that he knowingly and intelligently chose to represent himself.

The judgment of the district court is affirmed.

_____